[Civ. No. 6358. Third Appellate District.—January 27, 1941.]

JOHN MEYER, Respondent, v. CALIFORNIA PRUNE AND APRICOT GROWERS' ASSOCIATION (a Nonprofit Cooperative Corporation) et al., Appellants.

Calkins, Hagar, Hall & Linforth and Curtiss E. Wetter for Appellants.

Pugh & Pugh for Respondent.

PULLEN, P. J.—Plaintiff, a prune grower of Tehama County, brought this action against the Tehama County Dried Fruit Association and the California Prune and Apricot Growers' Association (each a non-profit cooperative marketing association) to recover the sum of $448, claimed to be due him for some 16,000 pounds of prunes delivered by him to defendants in 1937.

The amended complaint alleges, in substance, that plaintiff entered into a written contract with the Tehama County Dried Fruit Association (hereinafter referred to as the Local), wherein he agreed to sell to said Local his entire crop of dried prunes grown on his ranch during the season of 1937, and to deliver them to the warehouse of defendant California Prune and Apricot Growers' Association (herein referred to as the Association) in Red Bluff, and for which the Local agreed to pay plaintiff the best price obtainable therefor, less costs of marketing. It is further alleged that on or about September 1, 1937, defendant Association notified plaintiff that it would pay him an advance payment for the 1937 crop at a certain rate for specified grades. It is then alleged the prunes were inspected on the ranch, and plaintiff was, by defendants, directed to deliver the crop to the warehouse of the Association in Red Bluff. It is also alleged plaintiff made delivery and received receipts therefor from the Association, and thereafter plaintiff received grade sheets, and was paid for some 12,000 pounds, but the defendants failed to grade or pay for an additional 16,000 pounds here in question, of the asserted value of $56 per ton, or a total of $448.

The answer admitted the membership of plaintiff, and the payments made, but denied any failure to grade the 16,000 pounds here in dispute, and alleged affirmatively this lot of prunes was graded and declared unfit to be marketed, and a tender to plaintiff of $80.37 in full payment therefor. During the trial it developed the theory of plaintiff was that the notification to him by the Association as to the advance payments constituted a new contract between him and the Association, which superseded the membership agreement between

plaintiff and the Local. The trial court adopted this theory, and judgment was rendered for plaintiff against the Association only.

Five points are presented as grounds for reversal,—first, the amended complaint failed to state a cause of action; second, the court erred in finding that the notification as to advance payments constituted an oral or any contract which superseded the membership agreement; third, the court erred in finding that defendants failed to grade the prunes; fourth, the court erred in giving judgment for plaintiff in an amount in excess of $80.37, and lastly, that the court erred in failing to render any judgment as to the Local.

We need not consider in detail all of these objections as the conclusion we have reached makes it unnecessary.

It is the contention of plaintiff that the following allegation in his amended complaint sets out a new oral contract—''that on or about the 1st. day of September 1937, the defendant California Prune & Apricot Growers Association notified plaintiff that they would pay him an advance payment for said 1937 prune crop . . . ''.

With this interpretation we cannot agree. This notification of an advance was not an offer or a new agreement but was in strict conformity with the terms of the written agreement already in existence between the parties. The original agreement provides for such advance payments (not an unusual provision in marketing contracts) in paragraph 6 (b) of the marketing agreement entered into between plaintiff and the Local, as follows:

''6 (b) The Local agrees to pay as substantial an advance payment on the prunes as the market and financial conditions will permit, as determined by the Board of Directors in each season, and such payments shall be made as soon as practicable after delivery of the prunes to it; and such advance payments may be proportionately higher for fruit classifying in more desirable grades or sizes from a commercial standpoint.''

It seems clear that by this allegation in the amended complaint plaintiff recognized the continued existence of the membership agreement, for an advance payment signifies a partial payment with other payments to follow, which go to make up the full payment. What that full payment was to be is found in the membership agreement, where it is provided:

''5. The Local agrees to resell such prunes, . . . at the best prices obtainable under market conditions and to pay over the

net amount received therefrom as payment in full to the Grower . . . after deducting therefrom . . . (Certain specified charges.)''

Whether the notification as to advance payments came from the Local or from the Association is immaterial. Plaintiff claims because the notification came from the Association it was indicative of a new contract, but the membership agreement authorizes the State Association to act for the County Association. Paragraph 7 provides:

''7. This local may exercise all of the packing, marketing and grading and inspection or other powers and rights herein granted to it through California Prune and Apricot Growers Association as a Central Sales Agency, the Grower recognizing that this Local will become a member of the California Prune and Apricot Growers Association and will contract with the California Prune and Apricot Growers Association to deliver all of the prunes and apricots handled by it to the California Prune and Apricot Growers Association for packing and marketing, and the Grower agrees that the Local may enter into any contract with the California Prune and Apricot Growers Association for such purposes and may agree to pool the prunes delivered hereunder with prunes of a similar grade and quality delivered by similar Locals under marketing agreements substantially similar to this, and the proceeds thereof shall be divided ratably according to deliveries from such Locals and shall be distributed to the grower members thereof as above provided.''

A further reason for holding the notification as to advances cannot be accepted as superseding the membership agreement is that the agreement itself provides the sole method of withdrawal. The first part of the membership agreement provides:

''This agreement may be terminated at any time during any year after 1936 by the Local or by the Grower by notice mailed to the Grower or the Local by registered mail between February 15th. and the last day of February of said year, said termination to take effect on March 15th. of the year in which said notice is delivered, provided, however, that this agreement shall remain in full force and effect as to all prunes delivered to the Local prior to such termination and until the sale of such prunes and the payment of the proceeds thereof to the Grower. Notice must be mailed within the period named herein to be effective, and shall be mailed

to the Local at its principal place of business and to the Grower at his last known address." And in paragraph 13 thereof, it is further provided:

"This agreement is one of a series generally similar in terms comprising with all such agreements, signed by individual growers, or otherwise, one single contract between the Local and the said Growers, mutually and individually obligated under all terms thereof."

We are here considering such a cooperative marketing agreement. The agreement specifies exactly how it may be terminated, and it cannot be abrogated or modified by anyone in violation of the rights of others to the contract. Obviously the court erred in holding the advance created a new or different contract, or that it superseded the membership agreement.

■ A further ground for reversal is that the amended complaint failed to state a cause of action. In view of the allegations of the original amended complaint that the rights of the parties were based upon a written agreement, and the theory apparently upon which the cause was tried and the judgment entered, that the plaintiff and the Association had entered into a new and oral agreement by virtue of notification of certain advance payments, it is difficult to know just what complaint is under scrutiny. It is clear, however, plaintiff is suing upon a contract wherein he was to be paid by someone, "the best price obtainable less certain deductions". He has alleged that price to be $56 per ton, but the amended complaint does not allege how that figure was determined or what the best price obtainable was, or what the deductions were or what were the various grades or sizes of the prunes delivered. These facts are essential as a part of plaintiff's case.

■ Plaintiff attempts to support his allegations and proof upon the theory of *indebitatus assumpsit,* or for goods sold and delivered, but plaintiff did not so frame his complaint and he is now limited by the issues of his own pleading. Neither does plaintiff show that the prunes were lost to him by reason of neglect on the part of defendants, as he did not sue for damages. He has sued upon a contract, and he is obligated to establish that contract and its terms, and the amount he claims to be due thereunder. Plaintiff also asserts that the grading was fraudulent, but no pleading of fraud has presented that issue, so it cannot be now considered.

The judgment is modified with directions to enter judgment in favor of plaintiff and against defendants for the sum of $80.37, which amount is conceded by defendants to be due. As so modified the judgment is affirmed, each side to bear their own costs.

Tuttle, J., and Thompson, J., concurred.